IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SIERRA CLUB, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:22-cv-01054 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| TENNESSEE VALLEY AUTHORITY, ) | MAGISTRATE JUDGE HOLMES |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is the Defendant Tennessee Valley Authority's ("TVA") Motion to Dismiss (Doc. No. 26). Plaintiff Sierra Club filed a response in opposition (Doc. No. 32), and TVA filed a reply (Doc. No. 39). For the reasons discussed below, the motion will be **DENIED**. Specifically, while the Court finds that Sierra Club lacks organizational standing, Sierra Club has established associational standing.

Sierra Club has also filed a Motion for Leave to File a Sur-Reply or, in the alternative, to strike new arguments raised by TVA for the first time in its reply. (Doc. No. 42). When considering TVA's motion to dismiss, the Court did not consider any of the new arguments raised by TVA in its reply. Accordingly, Sierra Club's Motion for Leave to File a Sur-Reply will be **DENIED** as moot.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Sierra Club is a national nonprofit environmental organization. (Doc. No. 1 ¶ 12). TVA is a federally owned electric utility corporation that operates the nation's largest public power system. (*Id.* ¶ 21).

This lawsuit arises from TVA's decision to build a gas-fired power plant in Humphreys County at the existing Johnsonville Reservation TVA facility ("Aero CTs Project"). (*Id.* ¶ 1). Sierra Club alleges that TVA violated the National Environmental Policy Act (NEPA) by failing to adequately analyze the climate consequences of the Aero CTs Project, adequately address greenhouse gas mitigation in light of executive orders to decarbonize the power sector, consider a reasonable range of alternatives to the Aero CTS Project, and prepare an environmental impact statement ("EIS"). (*Id.* ¶¶ 81-146). Sierra Club also alleges that TVA's failure to adequately evaluate the impacts from the Aeto CTs Project has injured an individual Sierra Club member's "recreational, aesthetic, health, and economic interests" because the member owns property near the Johnsonville facility. (*Id.* ¶ 16).

Sierra Club seeks various remedies against TVA including (1) a declaratory judgment that the Environmental Assessment ("EA") for the Aero CTs Project violates NEPA and that TVA's decision to issue a Finding of No Significant Impact ("FONSI") was arbitrary, capricious, and/or not in accordance with law; (2) that the EA and FONSI for the Aero CTs Project be vacated; (3) that TVA be ordered to prepare an EIS for the Aero CTs Project; (4) that further construction and operation of the Aero CCTs be enjoined until TVA has complied with NEPA; and (5) an award in favor of Sierra Club for the costs of this action. (Doc. No. 1 at 30).

On March 20, 2023, TVA filed the pending motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing that Sierra Club lacks standing to assert its claims.

## II. STANDARD OF REVIEW

Whether a court has subject-matter jurisdiction is a "threshold determination" in any action. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). This reflects the fundamental principle that "[j]urisdiction is power to declare the law, and when it ceases to exist,

2

the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)). The party asserting subject-matter jurisdiction bears the burden of establishing that it exists. *Ammons v. Ally Fin., Inc.*, 305 F. Supp. 3d 818, 820 (M.D. Tenn. 2018).

A motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction "can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 759 (6th Cir. 2014) (internal citation omitted). A facial attack challenges the sufficiency of the pleading and, like a motion under Rule 12(b)(6), requires the Court to take all factual allegations in the pleading as true. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816-17 (6th Cir. 2017) (citing *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)).

A factual attack challenges the allegations supporting jurisdiction, raising "a factual controversy requiring the district court to 'weigh the conflicting evidence to arrive at the factual predicate that subject matter does or does not exist.'" *Id.* at 817 (quoting *Gentek*, 491 F.3d at 330). When analyzing a factual attack as to standing, the court may undertake "a factual inquiry regarding the complaint's allegations only when the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's claim." *Gentek*, 491 F.3d at 330. District courts reviewing factual attacks have "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.3d 320, 325 (6th Cir. 1990).

Here, TVA presents a factual attack. Accordingly, in addition to considering the allegations in the Complaint, the Court has considered the declarations filed by the parties. (*See* Doc. Nos. 28-29, 33-37).

### III. ANALYSIS

#### A. Article III Standing

To satisfy the "case or controversy" limitation consistent with Article III of the United States Constitution, a plaintiff must show that it has (1) "suffered an 'injury in fact' – an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 167 (1997) (internal citation omitted).

#### B. Associational Standing

An organization can establish standing in one of two ways: (1) by showing it has suffered a "palpable injury" as a result of defendant's actions; or (2) as the representative of its members, known as associational standing. In order to establish associational standing, an organization must show that (a) its members would otherwise have standing to sue in their own right; (b) the interests the action seek to protect are "germane to the organization's purpose"; and (c) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Assn. of Am. Physicians & Surgeons v. U.S. Food and Drug Administration*, 13 F.4th 531, 537 (6th Cir. 2021). Additionally, "[o]nce the plaintiff has alleged a colorable or arguable claim that the defendant has invaded a legally protected interest, the plaintiff has sufficiently alleged the

invasion of such interest, as required under injury-in-fact element of Article III standing." *CHKRS, LLC v. City of Dublin*, 984 F.3d 483 (6th Cir. 2021) (internal citation omitted).

Here, Sierra Club argues it has standing both on its own and associational standing on behalf of its members. TVA's attack of Sierra Club's standing to bring the claims on behalf of its members focuses on the "injury in fact" element. (Doc. No. 27, at 12-15). Specifically, TVA argues that the "aesthetic, recreational, health, and economic interests" of Sierra Club's member are too attenuated because the member's property is approximately three miles from the TVA facility in question. This argument invites the Court to make a merits determination instead of determining whether Sierra Club has alleged sufficient injuries to establish standing. Indeed, Sierra Club pleads and then provides support for the proposition that the challenged conduct will have an adverse health impact on individuals near the TVA facility. The Court's inquiry as to the injury-in-fact prong of the standing analysis can end there. The impact from exposure to pollutants provides a concrete injury to satisfy Article III standing. *Club v. U.S. E.P.A.*, 793 F.3d 656, 663 (6th Cir. 2015) (internal citation omitted). Accordingly, the Court finds that Sierra Club has established associational standing.

## C. Organizational Standing

TVA also argues that Sierra Club does not have organizational standing. Specifically, TVA claims that Sierra Club has alleged that TVA violated NEPA by depriving Sierra Club of information that it might use in future advocacy efforts, and which may make it harder to achieve Sierra Club's overall goal of advancing a clean energy transition in the Tennessee Valley. (Doc. No. 27 at 9). TVA argues this claim "is merely conjectural and hypothetical and therefore cannot establish standing." (*Id.*).

In response, Sierra Club argues that the EA unlawfully deprived it of information to which it is entitled under NEPA about the climate impacts of the Aero CTs Project and that this denial is a "valid informational injury under Article III." (Doc. No. 32 at 14). Sierra Club also claims that it is already suffering adverse effects as it has been denied information that would help it evaluate other TVA proposals for gas-fired power plants. (*Id.*). Sierra Club argues that its "informational injury has already occurred and the adverse effects are ongoing." (*Id.* at 15).

To allege informational injury, a plaintiff must allege "concrete and particularized injury" where they were (1) "deprived of information that, on its interpretation, a statute requires the government or a third party to disclose it to," and (2) that "by being denied access to that information," the plaintiff suffers, which is the type of harm Congress sought to prevent by requiring disclosure. *Protect Our Aquifer v. Tennessee Valley Auth.*, 554 F. Supp. 3d 940 (W.D. Tenn. 2021) (internal citation omitted).

TVA argues that Sierra Club has submitted multiple requests under the Freedom of Information Act (FOIA) and that Sierra Club's position is based on the theory that TVA failed to conduct a proper review for this project under NEPA. In support of its informational injury argument, Sierra Club relies on portions of the Declaration of Amy Kelly (Doc. No. 37). Ms. Kelly's testimony about the information Sierra Club did not receive is based on her position that TVA failed to prepare an EIS and this information could have been provided had TVA undertaken that process.

This informational injury is based on what Sierra Club expects the EIS would have stated, not information in TVA's possession that was not made available to Sierra Club. Put another way, the alleged informational injury is a restated summary of Sierra Club's substantive claims that TVA's preparation of an EA was insufficient, resulting in informational injury to Sierra Club.

6

However, Sierra Club's recitation of the requirements of NEPA in the Complaint supports that NEPA allows for preparation of an EA in certain circumstances, so long as there is not a substantial possibility that the proposed action will have a significant impact on the environment. (Doc. No. ¶¶ 30-34).

While Sierra Club clearly challenges the sufficiency of TVA's EA for the Johnsonville facility, whether an EIS would have provided the information Ms. Kelly believes it would have provided – and thus, the basis for Sierra Club's informational injury – is speculative, especially given that Sierra Club sought information through FOIA requests. (Doc. No. 27-3).

In sum, the Court concludes that Sierra Club's "informational injury" argument in support of organizational standing is inherently speculative as to what information would have been provided in an EIS as opposed to the completed EA. Speculative injury cannot serve as the basis for Article III standing. *Gerber v. Herskovitz*, 14 F.4th 500, 505 (6th Cir. 2021) (internal citation omitted). Accordingly, the Court finds that Sierra Club has failed to establish organizational standing.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE